George Hofmann (10005)
Steven C. Strong (6340)
Victor P. Copeland (13511)
**Parsons Kinghorn Harris**
A Professional Corporation
111 East Broadway, 11th Floor
Salt Lake City, UT 84111
Telephone: (801) 363-4300
gbh@pkhlawyers.com
scs@pkhlawyers.com

Proposed Attorneys for
Infinia Corporation

Troy J. Aramburu (10444)
Jeff D. Tuttle (14500)
**Snell & Wilmer L.L.P.**
15 West South Temple, Suite 1200
Salt Lake City, Utah 84101
Telephone: (801) 257-1900
taramburu@swlaw.com
jtuttle@swlaw.com

Proposed Attorneys for
PowerPlay Solar I, LLC

**IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF UTAH, CENTRAL DIVISION**

| In re INFINIA CORPORATION, LLC, and POWERPLAY SOLAR I, LLC,<br><br>Debtors. | Jointly Administered under Case No. 13-30688 (WTT)<br><br>Chapter 11<br><br>**THIS DOCUMENT RELATES TO**:<br><br>☐ In re Infinia Corporation<br>☐ In re PowerPlay Solar I, LLC<br>☒ Both Debtors |
|---|---|

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR ORDER:
(A) APPROVING BID PROCEDURES FOR SALE OF SUBSTANTIALLY ALL OF
DEBTORS' ASSETS; (B) AUTHORIZING THE SALE
OF DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS,
ENCUMBRANCES, AND INTERESTS; (C) WAIVING THE 14-DAY STAY
OTHERWISE APPLICABLE UNDER BANKRUPTCY RULES 6004 AND 6006;
AND (D) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF EXECUTORY
CONTRACTS AND UNEXPIRED LEASES**

_____

Infinia Corporation ("Infinia") and PowerPlay Solar I, LLC ("PowerPlay" and,

together with Infinia, the "Debtors") respectfully submit this supplemental memorandum in

{00176832.DOCX / 3}

support of their motion (the "Motion") seeking entry of orders: (a) approving bid procedures for the sale of the Debtors' assets; (b) authorizing the sale of the Debtors' assets free and clear of liens, claims, encumbrances and interests; (c) waiving the 14-day stay otherwise applicable under Bankruptcy Rules 6004 and 6006; and (d) authorizing the assumption and assignment of certain executory contracts and unexpired leases.  In further support of the Motion, the Debtors respectfully represent as follows:

## RELEVANT BACKGROUND

1. Through the Motion, the Debtors seek approval of proposed bid procedures and the proposed sale of substantially all assets of the Debtors to Atlas (defined below) or another purchaser (the "Sale"), and seek related relief as set forth in the Motion.

2. The Debtors have recently experienced serious cash-flow problems and likely would be unable to continue as going concerns, even after significantly scaling back their operations, without the inflow of debtor-in-possession ("DIP") financing.  Thus, the Debtors are seeking Court approval by separate motion for a DIP financing facility (the "DIP Loan") from Atlas Global Investment Management LLP, as administrative agent and collateral agent, and Atlas Global Asset Holdings LP (collectively, "Atlas") which is also the pre-petition secured lender as noted in the Motion.  Moreover, even with scaled-down operations and the new post-petition funds being sought through the DIP Loan, the Debtors project that they likely will be unable to continue business operations as stand-alone companies beyond early December 2013.

3. Facing the prospect of quickly running out of cash and finding that they were unable to raise additional cash in the short time frame available other than through

2

the DIP Loan, the Debtors recently determined that the only viable means of preserving some of the value of their business for the benefit of creditors and other stakeholders would be to promptly sell their assets in a chapter 11 bankruptcy case. Accordingly, the Debtors sought and obtained a commitment from Atlas to finance the Debtors' operations, for a limited period through late November or early December 2013, until a Sale can be completed, and received a proposal from Atlas to purchase substantially all of their assets on an expedited basis.

4. Therefore, the Debtors have concluded in their reasonable business judgment that a prompt sale of substantially all of their assets during their chapter 11 cases while the Debtors are operating as going-concern businesses will be in the best interest of the Debtors' bankruptcy estates, their respective creditors, and all stakeholders.

5. The Debtors have negotiated the terms of an Asset Purchase Agreement dated September 17, 2013 (the "Atlas Agreement") (which will be substantially in the form attached as <u>Exhibit 1</u> to the Motion)[1] by which the Debtors propose to sell substantially all of their assets to Atlas, subject to Court approval and higher or better offers, on the terms and conditions set forth in the Atlas Agreement (including the requirement that the sale close by no later than sixty (60) days following the Petition Date).

6. On September 24, 2013, the Court conducted a hearing on several of the Debtors' "first day" motions regarding joint administration, employee wages and interim

---

[1] Any summary of or reference to the Atlas Agreement in this Motion is qualified in its entirety by the Atlas Agreement itself. To the extent there are any conflicts between any summary or reference and the Atlas Agreement, the terms of the Atlas Agreement shall govern.

3

post-petition financing.  [See Docket No. 45 for audio file].  At the hearing, the Court granted the motions and made the following observations regarding the hearing scheduled for October 4, 2013:

> One thing that I haven't heard at all is what impact was this going to have on any plan.  That's a significant missing element and component of all of this today.  If you look at the old cases, my old Medical Software case and the old Lionel case, they talk about what impact sales are going to have on a plan in prospect, or whatever, and that's significant.  You just don't file a Chapter 11 to liquidate your assets and walk away.  I think there should be some evidence of what a plan is going to be.  I'm just giving you a heads up.

Docket No. 45, starting at 1:35:52.

7. The Debtors intend to file a Chapter 11 Plan of Liquidation on or before October 4, 2013.  The purpose of this supplemental memorandum is to address the Court's observations regarding the impact of the proposed sale on any proposed plan.

**APPLICABLE AUTHORITY**

**A. Sale of Substantially All Assets Under Bankruptcy Code § 363(b)**

8. Bankruptcy Code § 363 provides that a debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b). In order to approve a sale of substantially all of a debtor's assets outside the ordinary course of business, a debtor must show: "(1) that a sound business reason exists for the sale; (2) there has been adequate and reasonable notice to interested parties, including full disclosure of the sale terms and the Debtor's relationship with the buyer; (3) that the sale price is fair and reasonable; and (4) that the proposed buyer is proceeding in good faith."  In re Medical Software Solutions, 286 B.R. 431, 439-40

4

{00176832.DOCX / 3}

(Bankr. D. Utah 2002); accord Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983) (identifying the "sound business purpose" test); In re Abbotts Dairies of Penn., Inc., 788 F.2d 143, 145-47 (3d Cir. 1986) (implicitly adopting the articulated business justification test of Lionel, and adding the "good faith" requirement).

9. As the Second Circuit observed in Lionel, the business justification test arises from the interplay between Bankruptcy Code § 363(b) and the "safeguards of disclosure, voting, acceptance and confirmation present in Chapter 11." Lionel, 722 F.2d at 1071.

> Resolving the apparent conflict between Chapter 11 and § 363(b) does not require an all or nothing approach.  Every sale under § 363(b) does not automatically short-circuit or side-step Chapter 11; nor are these two statutory provisions to be read as mutually exclusive.  Instead, if a bankruptcy judge is to administer a business reorganization successfully under the Code, then – like the related yet independent tasks performed in modern production techniques to ensure good results – some play for the operation of both § 363(b) and Chapter 11 must be allowed for.

Id.  The factors courts consider to determine whether a good business reason exists to approve a sale outside the plan process include: "(1) the proportionate value of the asset to the estate as a whole; (2) the amount of elapsed time since the filing; (3) the likelihood that a plan of reorganization will be proposed and confirmed in the near future; (4) the effect of the proposed disposition on the future plans of reorganization; (5) the proceeds to be obtained from the disposition vis-a-vis any appraisals of the property; (6) which of the alternatives of use, sale or lease the proposal envisions; and *(7) most importantly perhaps, whether the asset is increasing or decreasing in value*." Medical Software Solutions, 286 B.R. at 441 (quoting Lionel, 722 F.2d at 1071) (emphasis original).

5

10. The Court's comment at the hearing on September 24, 2013 appears to have been directed toward the fourth articulated factor, i.e., "what impact this is going to have on any plan." Docket No. 45, starting at 1:35:52. A related line of cases regarding so-called "*sub rosa* plans" also focuses particularly on this factor.

11. Specifically, the flexibility or "play" described in Lionel that permits a sale of substantially all assets under § 363(b) does not allow a debtor or any other party to use the proposed sale to dictate or create the terms of a future reorganization plan in a way that would circumvent the statutory mandates for plan confirmation. See In re Braniff Airways, Inc., 700 F.2d 935, 939 (5th Cir. 1983) (reversing approval of § 363(b) sale that contained provisions (a) that "had the practical effect of dictating some of the terms of any future reorganization plan," (b) required secured creditors to vote in favor of certain plans of reorganization and (c) provided for a "release of claims by all parties against" the debtor).

12. When the factors identified in Braniff Airways are not present, however, courts have rejected invitations to expand the concept of *sub rosa* plans to preclude asset sales under § 363(b):

> A proposed 363 sale may be objectionable, for example, when aspects of the transaction dictate the terms of the ensuing plan or constrain parties in exercising their confirmation rights, such as by placing restrictions on creditors' rights to vote on a plan. A 363 sale … also may be objectionable as a *sub rosa* plan if the sale itself seeks to allocate or dictate the distribution of sale proceeds among different classes of creditors. ¶ But none of those factors is present here. The MPA does not dictate the terms of a plan of reorganization, as it does not attempt to dictate or restructure the rights of the creditors of this estate. It merely brings in value. <u>Creditors will thereafter share in that value pursuant to a chapter 11 plan subject to confirmation by the Court. A transaction contemplating that does not</u>

6

amount to a *sub rosa* plan.

In re General Motors Corp., 407 B.R. 463, 495-496 (Bankr. S.D.N.Y 2009) (emphasis added); see also Indiana State Police Pension Trust v. Chrysler LLC (In re Chrysler LLC), 576 F.3d 108, 113-119 (2d Cir. 2009) (analyzing evolution of and scholarly commentary on § 363(b) sales in commercial Chapter 11 cases and concluding that sale did not amount to sub rosa plan), vacated on mootness grounds, 592 F.3d 370 (2d Cir. 2010).

13. In this case, the Debtors do not intend to "file a Chapter 11 to liquidate [their] assets and walk away." See Docket No. 45, starting at 1:35:52. Rather, the sale proposed through the Motion is designed to maximize the going concern values of the Debtors' estates to be subsequently administered using the "safeguards of disclosure, voting, acceptance and confirmation present in Chapter 11." Lionel, 722 F.2d at 1071. Indeed, the Debtors intend to file a proposed plan of liquidation on or prior to the day of the final hearing on the bid procedures aspect of the Motion.

14. Moreover, the Sale proposed through the Motion and the Atlas Agreement does not exhibit any of the factors present in Braniff Airways. See Braniff Airways, Inc., 700 F.2d at 939. The proposed Sale does not create terms of any plan of reorganization. Nor does the proposed Sale dictate the treatment of creditors or how proceeds of the Sale are to be distributed under the Debtors' plan of liquidation. At most, the Atlas Agreement provides for the Debtors to retain a "Cash Carve-Out" of $150,000 to be used for certain post-closing administrative expenses and to provide funds sufficient to make a distribution of at least $100,000 to unsecured creditors. See Atlas Agreement at § 6.12. The Debtors emphasize, however, that the funds available for unsecured creditors through this "Cash Carve-Out"

7

come from post-petition "Funding by Purchaser," and thus are "entirely attributable to new value." See id; Chrysler, 576 F.3d at 118. In any event, this provision in the Atlas Agreement does not dictate treatment of administrative expenses or unsecured creditors under the Plan—it merely provides a base level of funds for post-closing administrative expenses and unsecured creditors from post-petition DIP financing.

15. At the October 4, 2013 hearing, the Debtors will present evidence to prove that the bid procedures proposed through the Motion are a reasonable exercise of the Debtors' business judgment. At the hearing to approve the Sale currently scheduled for November 4, 2013, the Debtors will present evidence that satisfies the elements and related factors articulated in Medical Software Solutions and Lionel.

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request entry of orders (i) approving the Bid Procedures in connection with the Sale of the Debtors' assets; (ii) authorizing the Sale free and clear of liens, claims, encumbrances and interests; (iii) waiving the 14-day stay otherwise applicable under Bankruptcy Rules 6004 and 6006; (iv) authorizing assumption and assignment of executory contracts and unexpired leases as selected by the successful bidder(s); and (v) granting the Debtors such other and further relief as the Court deems just and proper.

Dated this 3rd day of October, 2013.

| **Snell & Wilmer L.L.P.** | **Parsons Kinghorn Harris** |
| | *A Professional Corporation* |
| /s/ Troy J. Aramburu | /s/ Steven C. Strong |
| Troy J. Aramburu | George B. Hofmann |
| Jeff D. Tuttle | Steven C. Strong |
| Proposed attorneys for | Victor P. Copeland |
| PowerPlay Solar I, LLC | Proposed attorneys for Infinia Corporation |

{00176832.DOCX / 3}

# CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of October, 2013, I caused to be served a true and correct copy of each of the following documents in the manner described further below:

1. Supplemental Memorandum in Support of Motion for Order: (A) Approving Bid Procedures for Sale of Substantially All of Debtors' Assets; (B) Authorizing the Sale of Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Interests; (C) Waiving the 14-Day Stay Otherwise Applicable Under Bankruptcy Rules 6004 and 6006; and (D) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases.

## **MANNER OF SERVICE**

1. **CM/ECF Service** - By electronically filing the documents described above with the United States Bankruptcy Court for the District of Utah using the CM/ECF system, which will send a notice of electronic filing to the following:

- Troy J. Aramburu, taramburu@swlaw.com, jpollard@swlaw.com;docket_slc@swlaw.com
- J. Thomas Beckett, tbeckett@parsonsbehle.com, ecf@parsonsbehle.com;kstankevitz@parsonsbehle.com
- Kenneth L. Cannon, kcannon@djplaw.com, khughes@djplaw.com
- Steven W. Dougherty, sdougherty@aklawfirm.com, peggy@aklawfirm.com
- George B. Hofmann, gbh@pkhlawyers.com, dh@pkhlawyers.com
- John T. Morgan tr, john.t.morgan@usdoj.gov, James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Rinehart.Peshell@usdoj.gov;Suzanne.Verhaal@usdoj.gov
- Steven C. Strong, scs@pkhlawyers.com, jh@pkhlawyers.com
- Angelo Thalassinos, athalassinos@brownrudnick.com
- United States Trustee, USTPRegion19.SK.ECF@usdoj.gov
- Russell S. Walker, rwalker@wklawpc.com, ckirk@wklawpc.com
- David R. Williams, dwilliams@wklawpc.com, kmacrae@wklawpc.com

{00176832.DOCX / 3}

2. **Electronic Mail Service** - By electronic mail service addressed to:

- J. Thomas Beckett, tbeckett@parsonsbehle.com
- Mary D. Bucci, MBucci@brownrudnick.com
- John F. Storz, JStorz@brownrudnick.com
- David R. Williams, dwilliams@wklawpc.com

Dated:   October 3, 2013.

                           **PARSONS KINGHORN HARRIS**
                           A Professional Corporation

                           /s/ Steven C. Strong
                           GEORGE HOFMANN
                           STEVEN C. STRONG
                           VICTOR P. COPELAND
                           Proposed Attorneys for Infinia Corporation