Danny C. Kelly (1788)
Bria L. Mertens (14236)
STOEL RIVES LLP
201 S Main Street, Suite 1100
Salt Lake City, UT  84111
Telephone:  (801) 328-3131
Facsimile:  (801) 578-6999

Attorneys for Kolden Solar-Tech Industrial Park Ltd.


IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>INFINIA CORPORATION, and<br>POWERPLAY SOLAR I, LLC,<br><br>        Debtors. | Jointly Administered under<br>Bankruptcy Case No. 13-30688 (WTT)<br><br>(Chapter 11 )<br><br>THIS DOCUMENT RELATES TO:<br><br>☐  In re Infinia Corporation<br>☐  In re PowerPlay Solar I, LLC<br>✓  Both Debtors |

**KOLDEN SOLAR-TECH INDUSTRIAL PARK LTD.'S (I) MOTION FOR ORDER PERMITTING POTENTIAL BIDDER TO DELIVER DOCUMENTS TO BECOME A QUALIFIED BIDDER BY THE BID DEADLINE; AND (II) MEMORANDUM IN SUPPORT OF THEREOF**

**MOTION**

Kolden Solar-Tech Industrial Park Ltd., a creditor and Potential Bidder[1] herein

("**Kolden**"), hereby moves the Court for an Oder (this "**Motion**") permitting Kolden to deliver to

the Debtors' counsel the Required Bid Documents by no later than the Bid Deadline of 4:00

---

[1] Unless otherwise defined or indicated herein, the capitalized terms used herein shall have the same meanings ascribed to the them in the Bidding Procedure Motion and the Bid Procedures (as such terms are described hereinafter).

p.m., November 7, 2013.  In effect, for the reasons set forth below, this Motion requests

permission for Kolden to provide the Required Bid Documents[2] without first delivering the

information and documents that Potential Bidders were to provide by not later than three

businesses days prior to the Bid Deadline so that Potential Bidders could become Qualified

Bidders, since the time for doing so has passed.  To be clear, this Motion does *not* seek to extend

the times for the currently scheduled Bid Deadline or Auction.  This Motion is supported by the

following Memorandum.

## MEMORANDUM

### I.     BACKGROUND

---

[2] The Required Bid Documents are set forth in the Bid Procedures:

> All bids must include the following documents (the "Required Bid Documents"):
> - A letter stating that (1) the bidder's offer is irrevocable until the earlier of (a) two business days after the assets for which the bidder is bidding have been disposed of pursuant to these Bid Procedures, or (b) thirty days after the Sale Hearing, (2) the bidder will be prepared and agrees to close the sale transaction by no later than 5 days after the Auction Date, subject to the prior entry of an order of the Court approving the Sale, and (3) the bid is not conditioned on bid protections or any expense reimbursement (including any break-up fee, termination fee or similar type of payment or reimbursement) and, by submitting a bid, the bidder waives the right to pursue a substantial contribution claim under 11 U.S.C. §503 related in any way to the submission of its bid or the Bidding Process;
>
> - An executed copy of an asset purchase agreement in form acceptable to the Debtors and substantially similar to the Atlas Agreement (an "Asset Purchase Agreement") and a mark-up comparison against the Atlas Agreement showing any proposed changes to the Atlas Agreement; and
>
> - A list of all executory contracts and unexpired leases of the Debtors that the bidder wishes to receive through assumption and assignment under Bankruptcy Code § 365, including a description of each contract or lease, the addresses of all counterparties to each contract, and any cure amount that the bidder believes to be due.

1.      Kolden is private company based in China with a primary focus on the development and utilization of renewable energy, equipment manufacturing, and product sales. Kolden has been aware of Infinia's operations generally, given their similar technological focus. Through monitoring Infinia's movements via the Internet, Kolden learned of Infinia's bankruptcy.

2.      On October 16, 2013, Kolden's Chief Operations Officer, Alex Han ("**Han**"), emailed Infinia's Chief Financial Officer, Jeff Williams ("**Williams**"), to express Kolden's interest in learning about the bidding process for the sale of Infinia's assets.  Williams responded to Han, copying Hamilton Clark's Managing Director, John McKenna ("**McKenna**"), indicating that Hamilton Clark would be handing the bidding process for Infinia and that McKenna would be able to provide Kolden with initial materials.  Copies of the emails referred to herein are attached here, collectively, as **Exhibit A**.

3.      On October 18, 2013, McKenna replied to Han's initial email and described the bidding process. McKenna indicated that, if Kolden was interested in pursuing the purchase of Infinia's assets, Kolden should sign the confidentiality agreement sent with the email (the "**NDA**"), which would allow access to a data room. McKenna mentioned that the bid procedures memo was attached to his email and indicated that offers must be submitted "by *close of business on November 7, 2013* to the Company's law firm together with very specific information and an earnest money deposit." (Emphasis added.)  McKenna also noted that the auction is scheduled for November 11, 2013.

4.      October 26, 2013, Han emailed McKenna with questions about the bidding process, including a question about the deposit amount and whether or not it would be

refundable.  This is the first time Kolden indicated it was aware of the deposit requirement.  On

October 28, 2013, McKenna replied to Han with responses to his questions, as well as a

summary of the bid procedures in which McKenna outlined the requirements that would be due

on November 4, 2013. No wire information was given.  McKenna also asked for additional

information about Kolden.

5.      On October 29, 2013, McKenna and Han exchanged additional emails relating to

difficulties they were experiencing reaching each other via telephone.  In a follow up email on

the same day, Han responded to McKenna's questions about Kolden and asked if a two-month

delay would be possible.

6.      On October 30, 2013, McKenna emailed Han suggesting that Kolden retain legal

counsel to assist with the diligence in connection with the transaction. Han responded with an

update on his efforts to confirm the bank that will issue the bank guarantee and to inquire further

about data room access. McKenna later emailed Han with data room access information as well

as a reminder about the November 4, 2013 deadline for submission of bids.  This email included

an enumerated list of the items due November 4, as well as wire instructions for the deposit. This

email also included a bolded note indicating that Infinia's counsel had stated that a cash deposit

requirement was not something that could be changed. Han replied with scanned copies of the

signed NDA.  By signing the NDA, Kolden became a Potential Bidder.

7.      On October 31, 2013, McKenna emailed Han regarding (i) contact information

for bankruptcy lawyers in Salt Lake City; (ii) conditions regarding the use of a bank guarantee,

namely that the guarantee must be able to be confirmed by a well-known US bank such that

Infinia could draw on the funds from within the US; and (iii) information regarding visas and

travel details for Kolden's visit to Utah.  Han and McKenna exchanged brief follow-up emails

containing additional details regarding visa information.

8.      On November 2, 2013, Han emailed McKenna to state that Kolden was discussing

the possible transaction with Salt Lake City attorneys, and to give a tentative date on which

Kolden representatives plan to arrive in Salt Lake City.

9.      On November 4, 2013, an attorney with Stoel Rives Clint Hanni ("**Hanni**")

emailed Debtors' counsel George Hofmann ("**Hofmann**") and McKenna, attaching a scan of a

certificate of deposit (the "**Certificate of Deposit**") from the China Construction Bank showing

that Kolden has 23,900,585 Yuan[3] on deposit, a copy of which is attached hereto as **Exhibit B**.

Hanni noted that Kolden would be able to provide a similar certificate of deposit from an affiliate

showing an additional deposit equaling approximately $2,200,000 on deposit with the same

bank.  In a subsequent email to Hofmann and Gil Miller ("**Miller**"), Hanni indicated that a Stoel

attorney currently working as the firm's resident China Initiative Advisor, Zhan Wang

("**Wang**")[4] had agreed to call the Construction Bank of China to discuss the Certificate of

Deposit.

10.      Later on November 4, 2013, Wang emailed Hanni to report that he had spoken

with the Chuxiong Chuwei Branch of the China Construction Bank, and that the bank confirmed

the authenticity of the Certificate of Deposit. Hanni forwarded Wang's email to Hofman and

Miller on the evening of November 4, 2013.

---

[3] Approximately $4,000,000.

[4] Wang is native in Chinese and fluent in English.  Wang had attended Renmin University of China
School of law, University of Washington School of Law for an LL.M in Global Business Law, and
University of Oxford for a Magister Juris focusing on business law.  He has passed the bar exam and is
waiting to be sworn in as a licensed attorney in New York.

11.    On November 5, 2013, Hofmann replied to Hanni's email regarding Wang's conversation with the China Construction Bank, copying McKenna, Williams, and others at Infinia and Hamilton Clark. Hofmann stated that Kolden is not currently a qualified bidder under the bid procedures order, and noted that the Debtor does not intend to seek relief from the bid procedures order to enable Kolden to submit an untimely bid. Hofmann indicated that the Debtor intends to provide Kolden with information relating to its business and to meet with Kolden representatives upon their visit to Utah.

## II.    DISCUSSION

By any standard, this case is on a fast track. Debtors filed their respective chapter 11 petitions on September 17, 2013, less than two months ago. One day later, they filed a 211 page motion to obtain debtor in possession financing from [Doc. 6] and a 103 page motion for an Order approving the Bid Procedures and the sale of substantially all of their assets to Atlas Global Investment Management ("**Atlas**"), which included a detailed 67 page asset purchase agreement (the "**APA**"). As such agreements are intended to do, the financing and the APA provide a tremendous advantage to Atlas with respect to the Bid Procedures and proposed Sale.

In a recent publication, Jonathan Landers, described this latest trend as follows:

> "[F]iling a case "ready to go" with a proposed sale of an operating business to an identified bidder, a fast-tracked bidding process, and a financing package that supports the fast sale process. . . . [T]*he new norm necessarily short-circuits or effectively ignores many of the carefully crafted processes included in the Bankruptcy Code and Rules that were designed to protect parties and creditors who are not part of the fast-track process.* This construct also relies heavily on financing orders to require a quick sale, *discourage competitive bidding, discourage any consideration of restructuring alternatives,* and minimize ultimate recoveries for creditor and equity constituencies. This article discusses some of the common provisions of such financing orders. In this discussion, we

assume that, as is common, the DIP lender is also the pre-petition lender, and that its pre-petition debt is undersecured.

*ABI Asset Sales Committee News*, Volume 10, Number 3 / September 2013, a copy of which is attached hereto as **Exhibit C**. With respect to several aspects of this expedited and skewed process, Mr. Lander observes that " it is hard to find any justification for the practice in [applicable sections of the Bankruptcy Cod] or in bankruptcy policy."

By the foregoing, Kolden is not seeking to undo the Court's prior Orders with respect to financing or the Bid Procedures. It recognizes that this is water under the bridge. Rather, Kolden submits that, based upon the facts recited above, the extensive head start that Atlas and, likely, any other Potential Bidders, have enjoyed, it is only reasonable and fair that Kolden, who has done everything it can do (especially given the time and international communications and financial arrangements involved) to meet the bidding requirements, particularly those that were do by no later than three days before the Bid Deadline, that Kolden be permitted to go straight to the Bid Deadline to submit the Required Bid Documents  -- the same deadline that other parties have to submit the documents and information that matters for Qualified Bidders to participate in the Auction.

Public and bankruptcy policy favor multiple bidders and competitive bidding and auctions. Other parties have no grounds to complain, since they would not be negatively impacted by the relief sought herein. This is especially true in light of the current fast-track process for which authority is difficult to find.

[*Continued on Next Page*]

### III.   CONCLUSION

WHEREFORE, Kolden respectfully requests that the Court enter an Order providing that

the Court (i) grant the relief sought herein and (ii) providing such other relief as may be just and

equitable.

DATED:  November 6, 2013.

STOEL RIVES LLP


/s/ Danny C. Kelly
Danny C. Kelly
Attorneys for Kolden Solar-Tech Industrial
Park Ltd.

**CERTIFICATE OF SERVICE**

I hereby certify that on November 6, 2013, true and correct copies of _____ was

served on the following parties:

### VIA ECF NOTIFICATION:

- Troy J. Aramburu -    taramburu@swlaw.com
- J. Thomas Beckett – tbeckett@parsonsbehle.com
- Kenneth L. Cannon – kcannon@djplaw.com
- Steven W. Dougherty – sdougherty@aklawfirm.com
- Goerge B. Hofmann – gbh@pkhlawyers.com
- John T. Morgan Jr. – john.t.morgan@usdoj.gov
- John F. Storz – jstorz@brownrudnick.com
- Steven C. Strong – scs@pkhlawyers.com
- Angelo Thalassinos – athalassinos@brownrudnick.com
- United States Trustee – USTPRegion19.sk.ecf@usdoj.gov
- Russell S. Walker – rwaler@wklawpc.com
- David R. Williams – dwilliams@wklawpc.com

_____