Danny C. Kelly (1788)
Bria L. Mertens (14236)
STOEL RIVES LLP
201 S Main Street, Suite 1100
Salt Lake City, UT 84111
Telephone: (801) 328-3131
Facsimile: (801) 578-6999

Attorneys for Kolden Solar-Tech Industrial Park Ltd.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>INFINIA CORPORATION, and<br>POWERPLAY SOLAR I, LLC,<br><br>　　　　　　Debtors. | Jointly Administered under<br>Bankruptcy Case No. 13-30688 (WTT)<br><br>(Chapter 11 )<br><br>THIS DOCUMENT RELATES TO:<br><br>　　　In re Infinia Corporation<br>　　　In re PowerPlay Solar I, LLC<br>　✓　Both Debtors |

**KOLDEN SOLAR-TECH INDUSTRIAL PARK LTD.'S OBJECTION TO AUCTION**

Kolden Solar-Tech Industrial Park Ltd., a creditor and Qualified Bidder[1] herein

("**Kolden**"), hereby objects to the Auction as conducted by the Debtors and the Debtors'

apparent determination that Ricor Generation Inc. ("**Ricor**") was the successful bidder at the

Auction. In connection herewith, Kolden hereby respectfully states as follows:

**BACKGROUND**

---

[1] Unless otherwise defined or indicated herein, the capitalized terms used herein shall have the same meanings ascribed to the them in the Bidding Procedure Motion and the Bid Procedures.

**Kolden Became a Qualified Bidder**

1. Kolden is private company based in China with a primary focus on the development and utilization of renewable energy, equipment manufacturing, and product sales. Kolden has been aware of Infinia's operations generally, given their similar technological focus. Through monitoring Infinia's movements via the Internet, Kolden learned of Infinia's bankruptcy.

2. On November 6, 2013, one day before the Bid Deadline, Kolden filed its (I) Motion For Order Permitting Potential Bidder To Deliver Documents To Become A Qualified Bidder By The Bid Deadline; And (II) Memorandum In Support Thereof (the "**Motion**") [Docket No. 141]. At the conclusion of the hearing on the Motion, the Court ruled that Kolden would be permitted to submit the documents and information specified in the "Participation Requirements" section of the Bid Procedures (on pages 2-3 thereof) attached to the Order Approving Bid Procedures for Sale of Substantially All of Debtors' Assets entered on October 11, 2013 [Docket No. 103] (the "**Bid Procedures Order**"), and the Required Bid Documents (as defined in the Bid Procedures attached to the Bid) by no later than the Bid Deadline of 4:00 p.m.

3. Kolden met the Bid Deadline and provided all the other materials to become a Qualified Bidder pursuant to the Bid Procedures Order.

4. On Friday, November 8, 2013, Kolden and the Debtor's counsel held a conference call with respect to Kolden becoming a Qualified Bidder. The Debtors said that, in order to participate in the Auction, Kolden would need to provide stronger evidence of its financial ability to close the transaction. The parties discussed several options, and Kolden was told that the best option was for it would be to wire an amount equal to its bid, plus $2,000,000

to the trust account of the Debtors' counsel. Another option was for Kolden to provide a commitment letter from a financial source that would provide the purchase price to close the transaction. Kolden chose the latter option.

5. On Saturday, November 9, 2013, Kolden provided to the Debtors a letter from Guizhou Aerospace Xinlin Casting & Forging Company Ltd. ("**Guizhou**"), along with a certificate of deposit showing that Guizhou had $10,000,000 on deposit with a Chinese bank and a letter from a Chinese bank stating that Guizhou was creditworthy and rated "AA" in China.

6. A few hours later, on Saturday, Kolden received an email from the debtor's financial advisor, John McKenna, stating that Kolden would be allowed to participate in the Auction. Specifically, the email informed Alex Han that "based on discussions tonight with Mike Ward and Jeff Williams, Infinia believes that the financial information provided by Clint Hanni earlier tonight is sufficient for [Kolden's] participation in the Auction on Monday."

### The Auction

7. To say that massive confusion pervaded the Auction from beginning to end would be an understatement. Nothing demonstrates this better than the transcript of the Auction itself, a copy of which is attached hereto as **Exhibit A** (the **"Auction Transcript"**).

8. As revealed in the Auction Transcript, the auction process was never explained or established at the beginning of the Auction and was changed at several points during the Auction without explanation. The bidding was terminated without advance notice even though Kolden was prepared to offer higher bids. Kolden's bid of $12 million, the highest bid offered, was not accepted, again any explanation other than concerns about the "likelihood of closing". "In the Words of Debtors counsel, "[b]ecause of the debtor's perception that there is an increased closing

delay that is probable with Kolden's bid that is not with Ricor's bid. (*Auction Transcript* at p. 60)

9. Kolden's bid of $12 million would result in $1.4 million more cash going to the unsecured creditors as compared to Ricor's highest bid.

10. All of Kolden's bid amounts were accepted in full without discount during most of the Auction. It was only near the end of the Auction that Kolden's bids were not accepted.

11. Perhaps the comments of Atlas's counsel summarize it most succinctly and objectively:

> MR. STORZ: Based on just raw numbers, the Kolden bid would appear to be higher and better than the Ricor bid, based on numbers. So what I'd like to know, Atlas is probably the single largest creditor subject to whatever MagicAll falls out. But we're certainly a very large creditor, given the unsecured notes that Atlas holds.
>
> MR. HOFMANN:   Yes.
>
> MR. STORZ: What's the basis for deeming the Ricor bid higher and better, when it's got a lower face amount associated with it?
>
> MR. HOFMANN:   Certainty of closing.
>
> MR. STORZ: So what's less concern about Kolden now than three hours ago when we were jumping up and down in $100,000 increments?
> MR. HOFMANN:   The amount.
>
> MR. STORZ: Okay. So with a nine -- wow. We were at like 9 million-ish.     That part didn't make the debtor's have any -- the level of confidence was high enough" at 9 million, that that bid was considered the highest and best at that time, but that changed as the purchase went above $10 million?

12. At each step along the way, Kolden has complied with all requests and played by the rules. Kolden agreed to all the conditions imposed at the Auction regarding modifying its bid to match the bid of Atlas Global. And yet, despite Kolden's best efforts, its final bid was not accepted even though it was the highest.

13. Kolden is prepared to provide proof in the form of a commitment letter from a financial backer that it will fund its purchase price as required by the motion, and is prepared to provide working capital to Infinia to allow its operations to continue during any interim period when US government approvals to the transaction are sought.

14. Kolden has stated on the record that it will bear the full consequences in the event it is unable to obtain governmental approval to the transaction.

PRC Regulations for the Control of Foreign Exchange (2nd Revision)

15. As the record reveals, the Auction process was not clearly explained or established at the beginning of the Auction, and the process was changed indiscriminately at several points during the Auction without explanation. The Auction was terminated abruptly without advance notice even though Kolden was prepared to offer higher bids. Kolden's bid of $12 million, the highest bid offered, was not accepted, without any explanation other than concerns about the likelihood of closing.

16. Kolden arrived at the Auction on Monday, November 11, 2013. On the record, Kolden stated that "both the purchase price that is bid plus the $2 million in DIP financing . . . would be funded in cash" by the time of the hearing on Wednesday at 1:00 pm. See transcript starting at the bottom of page 26.

17. Kolden's final bid for $12 million was not accepted at the Auction. Rather, Ricor was declared to be the party with the highest and best bid. Atlas was declared to be the backup bidder.

18. Since Kolden's final bid was not accepted, there was no purchase price for it to pay, and the money could not be funded into the trust account.

19. In order for Kolden to wire large amounts of money (in excess of $250,000 per day) out of China, Kolden must obtain advance government approval of the transfer of funds. This approval requires that there be an actual, confirmed transaction to which the money is to be applied. Such large amounts cannot be transferred out of the country for a "hypothetical" transaction.

## II.    DISCUSSION

Kolden objects to the Debtors' Report of Auction Results (the "**Report**") for two reasons. First, the Auction itself was not conducted in a fair and reasonable manner. Second, the Debtors' refusal to recognize Kolden's bid as being a higher and better offer than the last offer submitted by Ricor cannot be considered to have been made in the Debtors' reasonable business judgment. Accordingly, Kolden believes that this Court cannot approve the Report as presented.

While the Debtors have significant discretion under the business judgment standard to determine the "highest and best" bid, the *process* through which the sale is conducted should be evaluated against a fair and reasonable standard, not the business judgment standard. *See In re American Safety Razor Co., LLC*, Bk. No. 10-12351-MFW (Bankr. D. Del. Oct. 6, 2010) (attached). The Auction process was flawed from the beginning; the rules and procedures that the parties were expected to follow were not distributed prior to the start of bidding. Debtors' counsel George Hofmann ("**Hofmann**") presented the bidding parameters orally. This engendered much confusion among the parties throughout the Auction. At several points, Hofmann appeared to change the procedures as the Auction progressed.

The apparent lack of consistency or predetermined rules for the Auction process ultimately led to a bizarre and sudden conclusion to the Auction. This result was brought about

in part by Ricor's unilateral decision to alter the Bid Procedures Order. The Bid Procedures contemplate that any bidder whose bid ranked them in second place behind the Successful Bid would be a back-up bidder in the event the Successful Bidder fails to consummate an approved sale. *See Bid Procedures*, p. 6. While placing what would ultimately be declared the Successful Bid, Ricor stated that it was "removing [itself] as a backup bidder." *Auction Transcript*, 46:18-19. Shortly after that statement, Atlas passed and Kolden was given an opportunity to submit a higher offer. *Auc. Tr.*, 47:2-3. Kolden submitted a bid of $10,530,000, which would yield a net of $4,602,209 for unsecured creditors. Auc. Tr. 47:4-7. Following Kolden's bid, Debtors' counsel announced a break. Auc. Tr. 47:8. Upon returning from the break, Debtors' counsel stated that "the Debtor has determined that the last bid by Kolden is not a higher or better offer." *Auc. Tr*. 47:12-13. Shortly thereafter, Debtors' counsel announced that the Auction was closed and that Debtors were "not entertaining any additional offers." *Auc. Tr.*, 49:22-23.

Ricor did not have the authority to declare that its bid would not serve as a back-up bid. The provision in the Bid Procedures that outlined the parameters for the Debtors to utilize a back-up bid from the next highest and best offer is part of an order of this Court; only this Court has the authority to augment that provision, not Ricor.

Further, Ricor's unilateral decision to "remove" itself as a back-up bidder conveniently paved the way for the Debtors to determine that Kolden's bid was not the highest and best offer. The Debtors apparently leaned back on the concerns they have had all along about Kolden's ability to close the final Sale, despite Kolden's extensive efforts to provide more than reasonable assurances and protections to the Debtors during the pre-closing interim period, and they rejected Kolden's offer.

Debtors have broad discretion to determine the highest and best offer for their assets in the Auction setting, but that discretion is not without limit. *In re After Six, Inc.*, 154 B.R. 876, 881 (Bankr. E.D. Pa. 1993) (deference to a debtor's decision as to a successful bidder of its assets is appropriate unless the debtor abused its discretion to make that decision). If the highest bid submitted at an Auction for a debtor's assets is "manifestly inadequate," it need not be accepted. *In re Gil-Bern Indus., Inc.*, 526 F.2d 627, 628 (1st Cir. 1975). However, in this case, Kolden's bid is not only significantly higher than Ricor's, but it also includes extensive financial safeguards to protect the Debtors and their estates from any risk associated with Kolden's status as a foreign corporation.[2] But beyond this, Kolden's bid is substantially higher than that of Ricor; selecting Kolden's offer as the Successful Bid would result in 33% greater recovery for unsecured creditors. The margin of difference between Kolden's and Ricor's offers is so significant that the Debtors cannot be considered to have used *reasonable* business judgment in selecting Ricor's offer.

Sale objections that are based on the fact that there is a higher offer are valid objections and must be sustained under certain circumstances. *In re Landscape Properties, Inc.*, 100 B.R. 445, 448 (Bankr. E.D. Ark. 1988) (ordering a rehearing on a proposed sale in order to allow an objecting purchaser to present reasons why its offer was superior). The Court must approach the proffered bids from the estate's point of view; to the extent it is aware that there is another bid that is better for the estate, the Court has the power to disapprove the proposed sale. *In re Broadmoor Place Investments, L.P.*, 994 F.2d 744, 746 (10th Cir. 1993) (stating that while a

---

[2] Kolden has committed to a) provide working capital to the Debtors above and beyond its bid amount to allow operations to continue while US government approvals to the transaction are sought; and b) bear the full consequences to the Debtors and their estates in the event Kolden is unable to obtain governmental approval to the transaction.

bankruptcy court cannot choose among competing bids, it can disapprove a sale based on the known existence of a better bid). *See also* **Exhibit B** hereto.

### III. CONCLUSION

WHEREFORE, Kolden respectfully requests that the Court enter an Order providing that the Court (i) grant the relief sought herein and (ii) providing such other relief as may be just and equitable.

DATED: November 13, 2013.

                                          STOEL RIVES LLP

                                          /s/ Danny C. Kelly
                                          Danny C. Kelly
                                          Attorneys for Kolden Solar-Tech Industrial Park Ltd.

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2013, true and correct copies of the foregoing

**KOLDEN SOLAR-TECH INDUSTRIAL PARK LTD.'S OBJECTION TO AUCTION** was

served on the following parties:

### VIA ECF NOTIFICATION and EMAIL:

| | |
|---|---|
| Troy J. Aramburu | taramburu@swlaw.com; jpollard@swlaw.com; docket_slc@swlaw.com |
| J. Thomas Beckett | tbeckett@parsonsbehle.com; ecf@parsonsbehle.com; kstankevitz@parsonsbehle.com |
| Kenneth L. Cannon | kcannon@djplaw.com; khughes@djplaw.com |
| Victor P Copeland | vpc@pkhlawyers.com; js@pkhlawyers.com |
| Joseph M.R. Covey | calendar@parrbrown.com |
| Steven W. Dougherty | sdougherty@aklawfirm.com; peggy@aklawfirm.com |
| George B. Hoffman | gbh@pkhlawyers.com; dh@pkhlawyers.com; aa@pkhlawyers.com |
| John T. Morgan | john.t.morgan@usdoj.gov; James.Gee@usdoj.gov; Lindsey.Huston@usdoj.gov; Rinehart.Peshell@usdoj.gov; Suzanne.Verhaal@usdoj.gov |
| David L. Pinkston | bankruptcy_dlp@scmlaw.com |
| John F. Storz | JStorz@brownrudnick.com |
| Steven C. Strong | scs@pkhlawyers.com; jh@pkhlawyers.com |
| Richard C. Terry | richard@tjblawyers.com; cbcecf@yahoo.com |
| Angelo Thalassinos | athalassinos@brownrudnick.com |
| Jeff D. Tuttle | jtuttle@swlaw.com; wsmart@swlaw.com |
| United States Trustee | USTPRegion19.SK.ECF@usdoj.gov |
| Russell S. Walker | rwalker@wklawpc.com; ckirk@wklawpc.com |
| David R. Williams | dwilliams@wklawpc.com; kmacrae@wklawpc.com |
| Victor W. Zhao | victor.w.zhao@usdoj.gov |
| Kim R. x3Wilson | bankruptcy_krw@scmlaw.com |
| Stuart Brown | stuart.brown@dlapiper.com |
| Gil A. Miller | gmiller@rockymountainadvisory.com |
| John McKenna | john.mckenna@hamiltonclark.com |

/s/ Danny C. Kelly

74984234.1 0046495-00001

# Exhibit A